**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**KRUMMHOLZ INTERNATIONAL, INC.**
and
**SWISSDIGITAL USA CO., LTD.,**

                           **Plaintiffs**                    **15-CV-086S(Sr)**

v.

**WENGER S.A.,**

                           **Defendants.**

---

### REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. William M. Skretny, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #25.

Currently before the Court is defendant Wenger, S.A.'s ("Wenger's"), motion to dismiss a complaint by plaintiffs Krummholz International, Inc. ("Krummholz"), and Swissdigital USA Co., Ltd. ("Swissdigital"), wherein they seek cancellation of defendant's trademark registrations and a declaratory judgment that plaintiffs are not infringing on defendant's intellectual property for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Dkt. #22. For the following reasons, it is recommended that the motion to dismiss be granted.

**BACKGROUND**

Plaintiffs are in the business of selling luggage, bags and backpacks with wearable intelligence.  Dkt. #1, ¶ 12.  For example, DigitalShield utilizes Bluetooth technology to locate its backpacks through an app on a smart phone.  Dkt. #1, ¶ 12.  Plaintiffs own several trademarks relevant to these products and have invested over one million dollars in global marketing and advertising of their products related to these trademarks.  Dkt. #1, ¶¶ 13-16.  Plaintiffs utilize an equilateral cross with a blue color scheme on their marks.  Dkt. #1, ¶ 12.

Plaintiffs initially offered products connected to U.S. Trademark Reg. No. 4462487, which is owned by Krummholz, for sale at the Travel Goods Association ("TGA"), Show in Las Vegas in March of 2011.  Dkt. #1, ¶ 17.  At the TGA Show in March of 2014, John Pullichino, CEO of Group III International, Ltd., an agent and authorized licensee of defendant, threatened to sue plaintiffs and informed plaintiffs' agent "that if he goes to the TGA show in March 2015 he will throw his product in the toilet."  Dkt. #1, ¶ 19 & Dkt. #5, ¶ 20.  Defendant sells low tech outdoor related goods, such as the Wenger Swiss Army Knife, which are marked with a Swiss flag bearing a red color scheme.  Dkt. #1, ¶ 18.

On January 15, 2015, defendant filed a petition for cancellation before the Trademark Trial and Appeal Board ("TTAB"), seeking to cancel U.S. Trademark Reg. No. 4462487 on the ground that the trademark is based upon copyright registration VA-1935912, which was authored by Group III International, Ltd. in 2003 and transferred to

defendant by written agreement. Dkt. #1, ¶¶ 20-22; Dkt. #1-5 & Dkt. #1-6.  Defendant has also filed cancellation proceedings against companies related to plaintiffs in Germany, Serbia and Hong Kong.  Dkt. #1, ¶ 23.

Plaintiffs commenced this action on January 29, 2015, alleging five causes of action seeking: (1) cancellation of 8 trademark registrations owned by defendant on the ground that the marks do not qualify for registration under the Lanham Act because the marks incorporate a Swiss flag; (2) declaratory judgment that the marks asserted by defendant in the cancellation proceeding are not enforceable; (3) declaratory judgment that plaintiffs are not infringing any trademark rights owned by defendant relating to the sale of goods described in plaintiffs' trademarks; (4) declaratory judgment that defendant's alleged copyright seeks to cover a bag, which is a "useful article" not subject to copyright protection; and (5) declaratory judgment that plaintiffs are not infringing on defendant's alleged copyright because defendant was aware of plaintiffs' trademarks at least as early as 2005 but failed to commence action against plaintiffs within three years after the claim accrued.  Dkt. #1.

Plaintiffs filed an amended complaint on March 26, 2015 alleging the same causes of action as in the original complaint, but with respect to 10 trademark registrations owned by defendant. Dkt. #5.

On June 10, 2015, defendant filed an action in the United States District Court, District of Nevada alleging infringement of defendant's trademarks and

copyrights by Fuzhou Hunter Product Import and Export Co., Ltd.; Swissdigital; Krummholz; Swissgear SARL; and Zhijian "Hunter" Li and sought a temporary restraining order and preliminary injunction.  Dkt. #22-1, ¶ 4.  In support of its request for injunctive relief, Jean-Daniel Bussard, CFO of Wenger, declared that Group III has been authorized to market products using the Wenger emblem since 2003, when it created the Wenger Logo Design and assigned the rights to that design to Wenger. Dkt. #30-2, ¶¶ 16-18.  Group III and Victorinox Travelgear AG are both licensed to manufacture and sell Wenger's travel, business and outdoor gear in the United States. Dkt. #30-2, ¶ 5. Mr. Bussard declares that Zhijian Li is a representative of Fuzhou Hunter Product Export and Import Co., which was a contract manufacturer for Group III from 2007 through mid-2014.  Dkt. #30-2, ¶ 27.  Mr. Bussard declares that Wenger

> learned after the fact that Mr. Li and some of his companies attended the March 2014 Travel Goods Association Trade Show in Phoenix, Arizona and that they marketed products under SWISSGEAR and the Wenger Log Design and Wenger Emblem.  To my knowledge, that was the first time that Wenger learned that defendants were marketing in the United States using Wenger's intellectual property.

Dkt. #30-2, ¶ 29.  Mr. Bussard further declares that Wenger also learned, again after the event, that plaintiffs attended the January 2015 Consumer Electronics Show in Las Vegas and marketed travel gear and other products which "misuse" Wenger's intellectual property.  Dkt. #30-2, ¶ 30.  The district court issued a temporary restraining order enjoining plaintiffs from using defendant's design as set forth in copyright registration VA-1935912 or defendant's emblem as set forth in multiple trademarks at the 2015 Licensing Expo at the Mandalay Bay Convention Center in Las Vegas, NV. 15-CV-637 at Dkt. #18.

On June 23, 2015, plaintiffs filed a second amended complaint (Dkt. #19), to correctly reflect defendant's ownership of the trademarks at issue in this action. Dkt. #13.

By Order entered June 30, 2015, the district court in Nevada denied the motion for preliminary injunction without prejudice for failure to demonstrate irreparable harm.  15-CV-637 at Dkt. #48.  Upon consent of the parties, the action was transferred to this Court by Order entered July 14, 2015.  Dkt. #51.

In a declaration dated September 17, 2015, Zhijian "Hunter" Li, President of Krummholz and Swissdigital, reiterates the exchange at the TGA Tradeshow in March of 2014:

> Mr. Pullichino threatened me and said that the products that my companies displayed at the show violate Wenger's marks and that a lawsuit would be brought to enforce Wenger's rights if I appeared at a tradeshow ever again and displayed products with the marks.  Mr. Pullichino also said that if he saw me at the TGA show again he would throw my products into the toilet.

Dkt. #28-1, ¶ 8.

## DISCUSSION AND ANALYSIS

Defendant argues that at the time that the original complaint was filed, *to wit*, January 29, 2015, there was no definite and concrete controversy between the parties as required to establish jurisdiction over the declaratory judgment claims.  Dkt. #22-6, p.5.  Specifically, defendant argues that defendant had not yet made any

-5-

charges of infringement or threatened litigation against plaintiffs in the United States. Dkt. #22-6, p.14.  Defendant argues that there is no allegation that the representative of Group III had any authority to enforce defendant's intellectual property rights or that his words at the TGA Show were sufficiently contemporaneous or specific to demonstrate a credible threat of immediate litigation.  Dkt. #22-6, p.15.  Defendant argues that the cancellation proceeding is not an assertion of infringement sufficient to establish an actual controversy and that the existence of related disputes between the parties outside of the United States is also not sufficient evidence that defendant intended to take action in this country.  Dkt. #22-6, pp.12-14. As to the first claim seeking cancellation of a trademark registration, defendant argues that there is no subject matter jurisdiction for a federal court to adjudicate cancellation of a trademark registration as a standalone claim.  Dkt. #22-6, p.5.

       Plaintiffs respond that Mr. Pullichino's threats of legal action are attributable to defendant given that Mr. Pullichino is the CEO of defendant's exclusive licensee, and that this threat, combined with the filing of a cancellation proceeding, is sufficient to demonstrate an actual controversy between the parties. Dkt. #28, pp.1-2. In addition, plaintiff argues that the Court should consider that defendant sought an emergency TRO and preliminary injunction in an *ex parte* proceeding in the District of Nevada.  Dkt. #28, p.2.

       Defendant replies that events that occurred subsequent to the filing of the complaint cannot establish jurisdiction.  Dkt. #30, p.1.  With respect to the alleged

threat by Group III, defendant disputes that Mr. Pullichino had any authority to speak on behalf of Wenger and notes that Group III's license is not exclusive.  Dkt. #30, p.7.

**Subject Matter Jurisdiction - Rule 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 113 (2d Cir. 2000).  In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court "must accept as true all material allegations in the complaint" and interpret a plaintiff's *pro se* complaint "to raise the strongest arguments" that the allegations suggest.  *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  The Court may refer to evidence outside the pleadings.  *Makarova,* 201 F.3d at 113.  The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.  *Id.*

**Declaratory Judgment Act - 28 U.S.C. § 2201**

The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).  The statute does not expand the subject matter jurisdiction of the federal courts, but simply refers to the type of cases and controversies that are justiciable under article III of the United States Constitution.  *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95 (2d Cir. 2011), *quoting MedImmune, Inc. v. Genetech, Inc.*, 549 U.S.

118, 127 (2007), *aff'd* __ U.S. __, 133 S.Ct. 721 (2012).  The "case or controversy must exist at the time of the filing of the complaint." *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 48 F. Supp.3d 675, 690 (S.D.N.Y. 2014); *Bausch & Lomb Inc. v. CIBA Corp.*, 39 F. Supp.2d 271, 274 (W.D.N.Y. 1999) (district court is to consider "the facts as they existed at the time the complaint was filed.") .  Jurisdiction cannot be carried back to the date of the original pleading complaint by allegations in an amended complaint.  *Id.*, *citing Innovative Therapies, Inc. v. Kinectic Concepts, Inc.*, 599 F.3d 1377, 1384 (Fed. Cir.), *cert. denied*, 562 U.S. 982 (2010).

To satisfy the "case of actual controversy" requirement, the Supreme Court requires "that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Medimmune,* 549 U.S. at 127, *quoting Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Medimmune,* 549 U.S. at 127, *quoting Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Thus, the district court must consider the totality of the circumstances in making its determination as to whether the party seeking relief under

the Declaratory Judgment Act has demonstrated that a justiciable controversy exists. *Nike*, 663 F.3d at 95, *citing Maryland Casualty*, 312 U.S. at 273.

Although the Supreme Court has rejected a requirement that a declaratory judgment plaintiff have a "reasonable apprehension of imminent suit," *MedImmune*, 549 U.S. at 132, n.11, the Court of Appeals for the Second Circuit has interpreted *MedImmune* to suggest "that the threat of future litigation remains relevant in determining whether an actual controversy exists." *Nike*, 663 F.3d at 96.  The question is not whether the plaintiffs' subjective fear of suit is genuine, but whether plaintiff has demonstrated a substantial risk that harm will occur, which may prompt plaintiff to reasonably incur costs to mitigate or avoid that harm.  *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1355 (Fed. Cir. 2013) (internal quotations omitted), *cert. denied*, __ U.S. __, 134 S.Ct. 901 (2014).  Thus, "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do.  *Id.*, *quoting Sandisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007).  Conversely, "declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent to pose a risk of infringement, without some affirmative act by the patentee." *Sandisk*, 480 F.3d at 1381; *See Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp.2d 398, 405 (S.D.N.Y. 2012), *quoting B.V. Optische Industrie de Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 173 (S.D.N.Y.

1995) ("[T]he mere fact that a competitor may own a patent which plaintiffs claim a right to does not create jurisdiction for a court to issue a declaratory judgment.").

"It is well-settled within this Circuit that the existence of a dispute before the TTAB over the registration of a party's mark, on its own, is insufficient to establish sufficient adversity for the purposes of a declaratory judgment action." *1-800-Flowers.com, Inc. v. Edible Arrangements, LLC*, 905 F. Supp.2d 451, 454 (E.D.N.Y. 2012) (internal quotation omitted); See *Topp-Cola Co. v. Coca-Cola Co.*, 314 F.2d 124, 126 (1963)(opposition to the registration of a trademark "is not, by itself a charge or warning of a future charge of infringement."); *Viña Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F. Supp.2d 391, 395 (S.D.N.Y. 2011) ("the existence of a dispute before the TTAB is insufficient to establish sufficient adversity for purposes of a declaratory judgment action."). In *Surefoot LC v. Sure Foot Corp.*, for example, the Court of Appeals for the Tenth Circuit explained that "because a party may oppose a trademark registration for reasons having nothing to do with any infringement dispute between the trademark applicant and opponent, courts should not take a TTAB opposition filing, automatically and by itself, to be conclusive evidence of a live infringement dispute." 531 F.3d 1236, 1246 (10th Cir. 2008). However, the Court of Appeals noted that TTAB oppositions in combination with threats of litigation had been deemed sufficient under certain circumstances to suggest a live infringement controversy and thus establish Article III jurisdiction. *Id.* at 1247 (collecting cases). Although declining to speculate on whether "the existence of a single TTAB opposition

-10-

proceeding, or perhaps a single cease-and-desist letter would satisfy the requirements for jurisdiction," the Court of Appeals determined that the "five separate TTAB oppositions combined with an extensive history of interactions between the parties in which the declaratory defendant expressly and repeatedly suggested historical and existing infringing activity by the declaratory plaintiff," were sufficient to support jurisdiction. *Id.* Similarly, in *Gelmart Indus., Inc. v. Eveready Battery Co., Inc.,* the district court found jurisdiction after noting a cease and desist letter requesting that Gelmart abandon its trademark application and cease use of the mark in addition to its statement in opposition to Gelmart's trademark application. __ F. Supp.3d __, 2014 WL 1512036, at *4 (S.D.N.Y. Apr. 15, 2014); *See also Crowned Heads, LLC v. National Grange of the Order of Patrons of Husbandry*, No. 3:12-CV-1062, 2013 WL 1347874, at * 7 (M.D. Tenn. April 3, 2013) (collecting cases supporting jurisdiction based upon the combination of opposition proceedings before the TTAB and cease and desist letters asserting infringement and/or threatening infringement actions).

In the instant case, Mr. Pullichino's remarks at the TGA Show in March of 2014 cannot provide the additional evidence of an actual controversy between plaintiffs and Wenger because there is no allegation that Mr. Pullichino was acting with any authority from Wenger when he threatened to sue plaintiffs. *See West Interactive Corp. v. First Data Res., Inc.,* 972 F.2d 1295, 1298 (Fed. Cir. 1992) (First Data licensee's statement that West Interactive was infringing First Data's patent could not be attributed to First Data); *Bausch & Lomb*, 39 F. Supp.2d at 274 ("To create a controversy between

plaintiff and the patentee, an agent must have actual or apparent authority to level a charge of infringement on behalf of the patentee."). In *Bausch & Lomb*, plaintiff commenced suit after a sales representative informed plaintiff that a co-inventor of defendant's patent had informed a third-party that defendant was going to sue plaintiff for patent infringement. *Id.* at 273. The district court dismissed the action for lack of subject matter jurisdiction because of the absence of any direct contact between the parties regarding possible infringement and the lack of evidence that the co-inventor possessed any authority to threaten litigation. *Id.* As in *Bausch & Lomb*, in this case there was no direct communication from Wenger demanding that plaintiffs cease use of the disputed mark prior to the filing of this action on January 29, 2015. Accordingly, there was no basis for the Court to assert subject matter jurisdiction over the declaratory judgment action. Absent such jurisdiction, the district court has no basis to cancel the registration as requested in the first cause of action pursuant to the Lanham Act. *See Nike*, 663 F.3d at 98 (cancellation of trademark registration under the Lanham Act is a "remedy for trademark infringement rather than an independent basis for federal jurisdiction" which can only be sought in connection with a properly instituted and jurisdictionally supportable action involving a registered mark).

## **CONCLUSION**

For the foregoing reasons, it is recommended that defendant's motion to dismiss plaintiff's complaint (Dkt. #22), be granted.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions

of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:** **Buffalo, New York**
**December 28, 2015**

    <u>*s/ H. Kenneth Schroeder, Jr.*</u>
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**